IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANDREA EMERALD,

    Plaintiff,

v.                                                              Civ. No. 22-470 GBW

KILOLO KIJAKAZI, *Acting
Commissioner of the Social Security
Administration*,

    Defendant.

## ORDER DENYING REMAND

This matter comes before the Court on Plaintiff's Motion to Reverse or Remand styled as Plaintiff's Motion for Judgment on the Pleadings. *Doc. 17*. For the reasons explained below, the Court DENIES Plaintiff's Motion and AFFIRMS the judgment of the SSA.

**I.**     **PROCEDURAL HISTORY**

Plaintiff filed an initial protective application for SSI and SSDI on May 16, 2019, alleging disability beginning March 14, 2018. Administrative Record ("AR") at 315, 320, 344. Plaintiff's application was denied on initial review on February 24, 2020, AR at 98-99, and again on reconsideration on June 22, 2021, AR at 134-35. An Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application on February 18, 2022, *see* AR at 44-71, and issued an unfavorable decision on March 22, 2022, *see* AR at 28. Plaintiff

sought review from the Appeals Council, which denied review on May 12, 2022, AR at 1, making the ALJ's denial the Commissioner's final decision, *see* 20 C.F.R. § 422.210(a).

On June 28, 2022, Plaintiff filed suit in this Court, seeking review and reversal of the ALJ's decision. *See doc. 2*. On November 28, 2022, Plaintiff filed her Motion to Reverse or Remand. *Doc. 17*. The Commissioner responded on February 27, 2023. *Doc. 20.* Briefing on Plaintiff's Motion was complete on March 13, 2023, after the deadline for Plaintiff to file a reply passed.

## II.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991). "In reviewing the ALJ's decision, [the Court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.2d at 800 (internal quotation marks omitted). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

"[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Indeed, the substantial evidence standard is met unless the evidence on which the ALJ relied is "overwhelmed by other evidence in the record or constitutes mere conclusion." *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)).

### III. ALJ EVALUATION

#### A. Legal Standard

For purposes of Supplemental Security Income benefits, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520.[1]

---

[1] Plaintiff has applied for both SSI and SSDI. The five-step test for determining disability and other relevant regulations are the same for both benefits but are codified in two separate parts of the Code of Federal Regulations. *See* 20 C.F.R §§ 404.1520, 416.920. Part 404 of Title 20 of the Code of Federal Regulations governs SSDI, while Part 416 governs SSI. In the interests of efficiency and judicial economy, the Court only cites to applicable regulations in Part 404 of Title 20 of the Code of Federal Regulations in this Order, but the analogous regulations in Part 416 also apply.

3

If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id.* § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id.* § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id.* at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### B. The ALJ's Decision

On March 22, 2022, the ALJ issued his decision denying Plaintiff's application for SSI and SSDI benefits. *See* AR at 28. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since March 14, 2018, the alleged onset date." AR at 14. At step two, he found that Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar spine; left knee laterally sublaxing patella; type II diabetes mellitus; obesity; Barrett's esophagus; gastroesophageal reflux disease (GERD); hypertension; obstructive sleep apnea; an affective disorder variously diagnosed as bipolar disorder, unspecified depressive disorder, or major depressive disorder; an unspecified anxiety disorder; and post-traumatic stress disorder." AR at 15. He also noted that Plaintiff has other medically determinable impairments, but the ALJ found these impairments to be non-severe. *Id.* At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or equal the severity of an impairment in the Listings. *Id.* at 15-17.

At step four, the ALJ found that Plaintiff has the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) with a few exceptions relating to lifting, carrying, standing, walking, and sitting.  AR at 17.  Plaintiff is limited to "frequently balancing, occasionally stooping, occasionally kneeling, occasionally crouching, and never crawling," and she is "limited to jobs that can be performed while using a handheld assistive device."  *Id.*  The ALJ also found that Plaintiff "can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with routine changes in work setting, maintain concentration[,] persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday."  *Id.*  Finally, the ALJ limited Plaintiff to "simple, routine, and repetitive tasks and occasional interaction with coworkers, supervisors, and the general public."  *Id.*

In making these findings, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and the other evidence in the record.  AR at 18.  The ALJ also reviewed Plaintiff's medical record and assessed the persuasiveness of each of the medical opinions in Plaintiff's record.  AR at 17-26

## IV.   ANALYSIS

Plaintiff argues that the ALJ's decision should be reversed and remanded because he failed to assess properly the medical opinions of Drs. Sorensen and Kramer, Dr. Merta, and Dr. Rowland. *See generally doc. 17-3*. Defendant disputes these arguments. *See generally doc. 20*. For the reasons explained below, the Court agrees with Defendant.

When assessing medical opinions, an ALJ must articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 404.1520c(b). Under 20 CFR § 404.1520c, the persuasiveness of a medical source's opinions depends on five factors: "supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. 2021) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)). Supportability and consistency are the only two factors that the ALJ must explain when assessing the persuasiveness of a medical source's opinions. *See* 20 C.F.R. § 404.1520c(b)(2). The factor of supportability "examines how closely connected a medical opinion is to the evidence and the medical source's explanations: 'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be.'" *Zhu*, 2021 WL 2794533, at *5 (internal brackets and ellipsis

omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(1)).  Consistency, by contrast, "compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.'"  *Id.*  (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(2)).

In the assessment, the ALJ must provide enough detail such that the Court "can follow the adjudicator's reasoning" and determine whether the "correct legal standards have been applied."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012); *see also Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (finding that an ALJ's reasons for rejecting a medical opinion must be "'sufficiently specific' to enable [the] court to meaningfully review his findings") (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).  Although the ALJ must "note[] the evidence upon which [he] relied, and that evidence [must be] specific, and verifiably supported by the record evidence," *Victoria Jean G. v. Kijakazi*, CIVIL ACTION No. 20-4053-JWL, 2021 WL 4168124, at *5 (D. Kan. Sept. 14, 2021), an ALJ is "not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009-1010.

### A.     Drs. Sorensen and Kramer

Plaintiff first argues that the ALJ failed to properly assess the medical opinions of Drs. Sorensen and Kramer because he failed to adequately evaluate the supportability and consistency of these opinions and because he failed to incorporate into the RFC

certain mental limitations assessed by Drs. Sorenson and Kramer. For Drs. Sorensen and Kramer, the ALJ stated:

> [The] administrative findings [of Drs. Sorensen and Kramer] are mostly persuasive because they are supported by citations to the medical and other evidence and consistent with the evidence as a whole. Dr. Soresen and Dr. Kramer are familiar with Social Security disability regulations and have an overview of the entire record.

AR at 23.

The Court finds that the ALJ's findings for the supportability and consistency factors, while not particularly thorough, are sufficient under the law. First, the ALJ provided concrete reasons for each factor. The fact that Dr. Sorensen and Dr. Kramer are familiar with Social Security disability regulations lends credence to the ALJ's opinion that their findings would be an accurate portrayal of the overall medical evidence. Second, the ALJ provided extensive analysis of Plaintiff's medical record as it relates to her physical and mental limitations, AR at 19-26, and he gave specific evidence for each of his findings with respect to Plaintiff's B criteria mental limitations, AR at 16. The ALJ is not required to repeat all of the medical evidence each time he assesses the persuasiveness of a new medical opinion. *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (unpublished) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting [the doctor's] opinion."). As such, the Court

9

is satisfied that the ALJ did not commit a legal error in his evaluation of Drs. Sorensen's and Kramer's opinions.

The ALJ also did not err by failing to include in the RFC Drs. Sorensen's and Kramer's findings that Plaintiff has moderate limitations in the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms or Dr. Sorensen's finding that Plaintiff has marked limitations in Plaintiff's ability to interact with the general public. Critically, the ALJ is not required to discuss every single finding made by a medical provider. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (holding that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"). The ALJ is only required to make specific findings with respect to the four paragraph B mental impairment categories, and neither of the above limitations are included in those four categories. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.00.F.2.

In addition, although the ALJ also must discuss any "significantly probative evidence he rejects," *Clifton*, 79 F.3d at 1010, Plaintiff has not shown why either of the above limitations are significantly probative. It is unclear how a moderate limitation in the ability to complete a normal workday/workweek without some interruptions from psychological symptoms is inconsistent with the limitations that the ALJ included in Plaintiff's RFC which include performing simple, routine tasks and maintaining

10

concentration and pace for only two hours at a time. AR at 17. Plaintiff appears to argue that this moderate limitation is completely incompatible with any job because being able to work a normal workday/workweek without any interruptions is a requirement for all jobs. *See doc. 17-3* at 18 (citing POMS DI 25020.010(B)). However, if the Court were to accept this argument, any doctor's finding of this moderate limitation would always automatically result in a disability finding, and this result does not comport with the law. *See* 20 C.F.R. Subpt. P. App. 1, § 12.00(A)(2)(b). Similarly, it is unclear how a finding that Plaintiff has marked limitations in interacting with the public is incompatible with Plaintiff's RFC which requires only "occasional interaction with . . . the general public." Finally, as noted by Defendant, none of the jobs identified by the vocational expert require much or any public interaction.[2]

Based on the foregoing reasons, the Court does not find that the ALJ erred regarding his evaluation of Drs. Sorensen's and Kramer's medical opinions.

**B.     Dr. Merta**

Next, Plaintiff argues that the ALJ erred by failing to evaluate the supportability and consistency of Dr. Merta's medical opinion and by failing to explain why he did not include in the RFC Dr. Merta's findings that Plaintiff has moderate to marked

---

[2] *See* DICOT 249.587-018, 1991 WL 672349 (document preparer); DICOT 919.663-022, 1991 WL 687886 (escort-vehicle driver); DICOT 713.684-038, 1991 WL 679267 (polisher, eyeglass frames) (job descriptions involve no public interaction).

limitations in overall cognitive function when her PTSD symptoms are severe. *Doc. 17-3* at 19-23. For Dr. Merta's opinion, the ALJ stated:

> I find Dr. Merta's opinion mostly persuasive, to the extent that it is generally consistent with and supports the RFC for a range of unskilled work, as set out in the RFC finding. Dr. Merta's opinion is supported by his mostly unremarkable findings on mental status examination and consistent with mental health treatment notes showing Claimant is generally stable.

AR at 25.

First, the Court does not find that the ALJ failed to assess the supportability and consistency of Dr. Merta's medical opinion. The ALJ described Dr. Merta's medical findings in detail, including several examples of unremarkable exam findings. AR at 24 (Plaintiff's "grooming and attire were appropriate"; "[a]ttitude and general behavior were unremarkable"; "[o]bserved affect was only somewhat congruent with her disclosed [depressed] mood"; "observed anxiety was not congruent with her disclosed anxiety"; Plaintiff "contended that she was not paranoid and harbored no other delusions"), AR at 25 (Plaintiff "did not appear to have any difficulty in understanding [the doctor]"; Plaintiff "appeared to have displayed good judgment in seeking and maintaining psychiatric treatment"). The ALJ also described Plaintiff's mental health records from other medical providers, including additional examples of unremarkable findings. AR at 21 ("CNP Hazen reported the Claimant was guarded and affect was flat, but findings on mental status examination were otherwise unremarkable."). Given this assessment, the Court finds that the ALJ's statement that "Dr. Merta's opinion is

12

supported by his mostly unremarkable findings on mental status examination and consistent with mental health treatment notes showing Claimant is generally stable" is specific enough for the Court to review the ALJ's findings, *Langley*, 373 F.3d at 1123, and thus sufficient under the law.

Second, the Court disagrees that the ALJ committed an error by not including greater cognitive limitations in Plaintiff's RFC given Dr. Merta's findings that Plaintiff has moderate to marked limitations in overall cognitive ability when her symptoms are severe. The ALJ did not ignore this particular piece since he noted it verbatim in his description of Dr. Merta's medical opinion. *See* AR at 25. However, he still found that Plaintiff's mostly unremarkable and stable mental status findings were more consistent with overall mild to moderate mental status limitations. AR at 16, 25. Because the Court may not reweigh the evidence, *Bowman*, 511 F.3d at 1272, the Court will uphold the ALJ's decision not to include greater cognitive limitations based on this particular medical finding from Dr. Merta.

### C. Dr. Rowland

Finally, Plaintiff argues that the ALJ erred in his assessment of Dr. Rowland's medical opinion because the ALJ's findings with respect to the supportability and consistency of the opinion are conclusory and because the ALJ did not include Dr. Rowland's assessed environmental limitations in the RFC and he did not explain the

omission. *Doc. 17-3* at 24-28. With respect to Dr. Rowland's medical opinion, the ALJ stated:

> Dr. Rowland's opinion is somewhat persuasive, to the extent that it supports the RFC for a range of sedentary work, but it is not supported by findings of inability to squat and use of cane, which suggest greater limitation. It is somewhat consistent with the opinions of Dr. Armstrong and Dr. Meites for a range of sedentary work and is inconsistent with the opinion of NP Fiato.

AR at 22.

Although the Court disagrees with Plaintiff that the ALJ's consistency finding is conclusory because the ALJ stated which opinions he found to be consistent with Dr. Rowland's opinion, the Court agrees that the ALJ's supportability finding is relatively conclusory as well as confusing. It does appear that the ALJ is determining whether the medical opinion is supported by the ALJ's pre-determined RFC rather than whether it is supported by the medical evidence presented in the opinion itself, as is required by law. 20 C.F.R. § 404.1520c(c)(1). However, the Court could also interpret the sentence about supportability to say that the medical evidence in Dr. Rowland's opinion, which the ALJ described in the previous two paragraphs, *see* AR at 22, does not support Dr. Rowland's finding that Plaintiff has a limited ability to bend or stoop and that Plaintiff may require use of a cane.

Regardless of the correct interpretation of the ALJ's supportability finding, the Court finds that any error the ALJ committed in his analysis of Dr. Rowland's opinion is harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Plaintiff does not

provide any argument for how the RFC would be different if the ALJ had made a different supportability finding.  *See generally doc. 17-3* at 24-27.  In addition, with respect to postural limitations, Plaintiff's RFC is as restrictive or more restrictive than the findings presented by Dr. Rowland.  For example, Dr. Rowland found that Plaintiff has a limited ability to bend or stoop and that an assistive device (cane) is helpful, but not required.  AR at 1557.  In the RFC, the ALJ limited Plaintiff to jobs where she can always use a handheld assistive device and where she only occasionally stoops or crouches.  AR at 17.  As a result, the Court finds that a different adjudicator who applied the correct legal standard to the analysis of Dr. Rowland's opinion would not reach a different result when determining the RFC.

Similarly, the Court finds that although the ALJ neglected to explain why he rejected Dr. Rowland's findings that Plaintiff has environmental limitations with respect to exposure to dust, fumes, or temperature changes, *see* AR at 1557, any error in this analysis was also harmless.  None of the three jobs identified by the vocational expert require any environmental exposure.[3]  As such, even if Dr. Rowland's findings

---

[3] *See* DICOT 249.587-018, 1991 WL 672349 (document preparer); DICOT 919.663-022, 1991 WL 687886 (escort-vehicle driver); DICOT 713.684-038, 1991 WL 679267 (polisher, eyeglass frames) (all noting no exposure to dust, fumes, or temperature changes).

regarding environmental limitations were included in the RFC, the ALJ's ultimate no disability finding would remain unchanged.

V.  CONCLUSION

For the foregoing reasons, the Court finds no reversible error in the ALJ's decision. Therefore, the Court DENIES Plaintiff's Motion to Reverse or Remand (*doc. 17*) and AFFIRMS the judgment of the SSA.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**